# EXHIBIT Z

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STEVEN D. MURRAY,<br>*Plaintiff*<br>v.<br><br>COMMUNITY COLLEGE OF<br>RHODE ISLAND, alias, COUNCIL ON<br>POST SECONDARY EDUCATION, alias,<br>and ROSEMARY COSTIGAN, alias,<br>in her individual and official capacities,<br>*Defendants* | C.A. No. 23-cv-00469-WES-LDA |

## AFFIDAVIT OF STEVEN D. MURRAY

1. My name is Steven D. Murray. I am over the age of eighteen (18), of sound mind, and could testify in court to the facts set forth in this Declaration if required.

2. I am the Plaintiff in the above captioned matter.

3. I am a tenured Professor at the Community College of Rhode Island ("CCRI") and have been a faculty member and a member of the CCRI community since on or about 1990, when I began as an adjunct faculty member.

4. CCRI is a public college with an open campus and holds itself out as such, something I have always been proud of. Members of the public, as well as students, faculty, and staff of CCRI, are free to use the library, cafeterias, lavatories facilities, and to walk and recreate on the grounds, as well as attend any number of events held on campus including sporting events, concerts, talks, presentations, and other such events and activities.

5. My personnel file, compiled over the thirty (30) years of my full time employment as an educator at CCRI, contains no record to support Alix Ogden's lay opinion defamatory assertions based on non-disclosed facts in ¶¶19 and 20 of her Declaration that CCRI is justified in continuing my leave/banishment due to alleged "bullying" and other defamatory descriptions of alleged improper conduct on my part.

6. Indeed, my personnel file, compiled over the thirty (30) years of my full-time employment, is composed entirely of evaluations that range from positive to glowing. Defamatory claims of, *inter alia*, "serious and habitual mistreatment of others" are not only entirely absent from my personnel file, they are directly contradicted by it.

7. In all the years of my employment at CCRI, I have never acted violently toward anyone nor threatened anyone with violence.

8. Banishing me from campus, from the CCRI community—of which I have been a part of for over thirty-two (32) years, and from my career as a tenured Professor at CCRI has

caused me great emotional distress and ongoing reputational harm, which worsens the longer my banishment lasts.

9. The banishment imposed on me not only has prevented me from teaching courses, but it has also prevented me from pursuing and completing professional and academic research, work, and advancement.

10. The lengthy pendency of disciplinary investigations against me, the attempt to recast personal disputes as gender discrimination, the new investigation and baseless allegations of other alleged misconduct on my part, the increase in scope and extension of the terms of my banishment, the abolishment of my department, and the loss of my Department Chair position have tarnished and damaged my personal and professional reputation and diminished the influence and impact of my academic and union related advocacy at CCRI—damage which increases the longer my banishment is in effect.

11. Similarly, I am unable to interact and converse with faculty and students between or after classes in the cafeteria, hallways and other sites on campus or at athletic, social, or cultural events held there, and I have been unable to maintain my visibility and presence as an engaged, active member of the community, while at the same time furthering my campaign for CCRIFA Union office, as President or Vice President, scheduled for April of 2024.

12. I have now been banned for almost ten (10) months from accessing my CCRI email account, the CCRI computer system/CCRI cloud- One Drive where I store professional materials, my office where I store professional materials, and my work phone, including the inability to answer any calls directed there or retrieve any messages left there since February 28, 2023.

13. Since being banished from campus on February 28, 2023, I have only been allowed back on campus twice to gather information for my defense in this matter. Each time was on a Saturday. One visit was for up to 2 hours. The other visit was for up to 8 hours. I have requested subsequent permission to return to my office for computer, email access and access to documents in my campus office to further prepare my defense to these matters and been denied by CCRI.

14. In August of 2023, I learned that my new department Chair, Maria Coclin, was emailing me at my CCRI email address (smurray@ccri.edu). I contacted her by email to remind her that my CCRI email account was disabled and to please send all email to my personal email account (smurraylaw@cox.net).

15. Chair Coclin responded by email on August 9, 2023; "Hello Steve, While you are on administrative leave, I will not be copying your personal email for anything related to your capacity as a faculty member. Thank you. Maria  Maria Coclin, CPA, Department Chair and Associate Professor, CCRI, Department of Business & Professional Studies."

16. The next day, on August 10, 2023, I received an email from Human Resources Director Sybil Bailey that reads: " Dear Professor Murray, I have been recently informed of your request to Professor Maria Coclin, Chair of the Department of Business Administration at CCRI, to include you in academic department communications that she may send out to the faculty within the Business Department. Please know that because you are currently on an Administrative Leave from your faculty position at the college, you should not be included in faculty matters associated

with your position as Professor. Therefore Professor Coclin will not be emailing any communications to your personal email address per your request. Upon your return from administrative leave, all emails sent to your CCRI email address will be available to you at that time. I appreciate your attention to this matter. Sincerely, Sybil Bailey."

17. Dean Stargard has sent emails to my faculty email address, knowing that I cannot access that email.

18. On the two occasions I was allowed access to my CCRI office for purposes of the Title IX complaint defense, the most recent of which was on or about May 2023, I noticed that I had received numerous emails from the CCRI Administration, other faculty members and current and former students. I have no way of knowing how many, from whom, and/or what the content is of any emails I have received in my CCRI email address since then.

19. Effective July 1, 2023, the Administration of CCRI merged my department, Criminal Justice and Legal Studies, into the Business department. As a result, my position as Chair of the Criminal Justice and Legal Studies department was eliminated, and I lost my Chair stipend of $5,000.00, plus a 9% retirement contribution for the Academic Year and $3,500.00 for the Summer Session, and the significant loss of reduction of my teaching workload each semester tied to my position as department Chair.

20. I am currently the Vice President of the Community College of Rhode Island Faculty Association ("CCRIFA").

21. The duties of the Vice President of the CCRIFA are listed in the By-laws of the CCRIFA attached in the Record Appendix to Plaintiff's Reply Memorandum of Law,[1] and it is essential for me to regularly be on campus to meet with our members in person to fully and effectively perform my work as Vice President of the CCRIFA.

22. Without the ability to interact and converse with faculty members between or after classes in the cafeteria, hallways and other sites on campus, I cannot effectively perform my duties as CCRIFA Vice President.

23. In the spring semester 2024, President Adam is on sabbatical from his teaching duties and there will be times that he will be traveling and will not be able to be in Rhode Island

---

[1] Article 4.4 of the CCRIFA By-laws state: "Vice President:"

The vice-president shall have the duties associated with the office. He or she shall:
  a.  Preside at Association meeting in the absence of the president.
  b.  Represent the president at committee meetings at the request of the president.
  c.  Represent the president at functions when representation of the Association is required.
  d.  Serve in consultation with the president to help resolve conflicts between Association members and CCRI's administration and/or the Office of Higher Education regarding contractual issues in accordance with Article IX of the contract between the CCRIFA and the Board of Governors.
  e.  In the case of dereliction, permanent incapacity, or unexpected retirement by the president, assume the presidency on an interim basis until the Nominating-Elections Committee arranges voting for a new president. (See Article VI for election procedures).

Page 3 of 7

to perform his duties as President of the CCRIFA. As Vice President of the union, I am responsible for taking over all his responsibilities while he is away.

24. Because I am banished from campus, I cannot effectively perform these duties as CCRIFA Vice President, because I will not be able to perform those duties of the CCRIFA President that require my appearance on campus, including attending any on-campus events, meetings, social events, or committee meeting obligations of President Adam while he is away.

25. As a result of being banned from all CCRI campuses, I have been banned from accessing the CCRIFA Union office located on the third floor of the CCRI Knight Campus. The CCRIFA Union office is where all of the CCRIFA records are stored, including member records, prior faculty contracts, grievance records, contract negotiation records, salary studies, and historical records of the union. I need access to those records to effectively do my work as Vice President.

26. CCRIFA President Mazin Adam has attempted to assign me to serve as the CCRIFA representative on the CCRI Faculty Senate, the 7-Week Course Semester Implementation Committee, and the contractually mandated Faculty Stipend and Release Time committee. Each of these bodies meet in person on campus at CCRI, and CCRI administrators have firmly and consistently prevented me from serving on these bodies as directed by President Adam by refusing to allow me on campus or to have them meet off campus.

27. The 7-Week Course Semester Implementation Committee is particularly important as it is part of CCRI's ongoing process of implementing a controversial, major change in curriculum format by decreasing the length of a semester from 15 weeks to a compressed 7 week schedule. President Adam chose to appoint me on this committee since, as Vice President of the union and longstanding influential and vocal advocate for the faculty and best interests of the faculty association, I was highly qualified to represent the association on this committee.

28. I intend to run as a candidate in the upcoming, April 2024, CCRIFA union election of officers for the position of either President or Vice-President of the CCRIFA.

29. In the two elections (2016 and 2018) in which I ran for office as President of the CCRIFA, I campaigned in person by visiting all four CCRI campuses and speaking in person and directly with many individual faculty members and, as a result, I was able to gain their support.

30. This direct, personal, and in-person communication is, in my view as an experienced union member and past elected officer, essential not only to successful campaigning, but also to successful union activity and organization more broadly.

31. I have also, as a faculty member, CCRIFA member, and CCRIFA officer, peacefully protested and picketed in the past in person on CCRI campuses, but I am now barred from taking part in such protests, including potential protests regarding my own mistreat by Defendants.

32. This kind of action on CCRI campuses is an essential and fundamental way to express disagreement with the policies and/or actions of the CCRI administration and can only be accomplished on CCRI campuses.

33. Similarly, the Defendant Council on Post Secondary Education, my employer, which is ultimately responsible for promulgating or authorizing policies at the CCRI, rotates its public meetings primarily between CCRI and RIC, and often meets at the CCRI Knight campus.

34. The next meeting of the Defendant Council on Post Secondary Education is scheduled for January 3, 2023 at the CCRI Knight Campus; however, I am prohibited from joining my fellow faculty members and attending, letting my voice be heard, or even potentially protesting because Defendants are imposing a banishment on me from all four CCRI campuses, as well as all of its satellite campuses under any and all circumstances.

35. I am an elected member (one of 13 faculty members) to the contractually mandated Curriculum Review Committee ("CRC"), which decides extremely important issues involving curriculum matters at CCRI.

36. The CRC is one of the most important and powerful committees at CCRI and the sole mechanism by which the faculty can exercise some measure of shared governance over curriculum matters.

37. Since being banned from campus, I have not been allowed access to the materials and documents of the CRC, I am banned from participating as a member of this committee, including being barred from attending any meetings and voting on matter before the CRC, despite being contractually elected to the CRC by the faculty, because the meetings of the CRC are held on campus and Defendants have refused to hold CRC meetings off-campus, to allow me on campus for those meetings, or to hold them remotely, thus negating my election to the CRC by the faculty and preventing me from taking this elected seat.

38. As Vice President of the union, I am the union's Grievance Committee Chair and, as such, it is my responsibility to attend and manage all grievance hearings.

39. Because of my banishment, the CCRI administration has cooperated in scheduling all grievance hearings off campus.

40. Similarly, the CCRI administration has agreed to hold all CBA mediation meetings off campus so that I, as one of the members on the CCRIFA negotiation team, may attend.

41. However, the CCRI Administration has not agreed to schedule any other committee meetings off campus to enable me to attend.

42. As mentioned in my Verified Complaint, the New England Commission of Higher Education ("NECHE"), the accrediting body for CCRI, has expressed concerns in the past with the issue of shared governance at the college—an issue about which I have been and am vocal and high-profile.

43. NECHE apparently visited the CCRI in December of this year as part of the 10 year accreditation review of CCRI.

44. NECHE will be on CCRI campus again, conducting meetings and speaking with faculty, staff, and students again in March of 2024, as part of its formal accreditation process.

45. The NECHE 10 year accreditation review is a highly important, and essential audit of CCRI's quality as a higher educational institution as well as a public college and is a unique and essential opportunity to hold the actions of Defendants and other CCRI administrators up to professional and public review as well as to collaboratively discuss the goals, directions, success, and failures of CCRI as an institution and a community.

46. I cannot, as CCRIFA Vice President, as an elected member of the CRC, or in any other capacity, effectively or meaningfully participate in this process because of my indefinite banishment from campus, not to mention the fact that any information I may be able to share with NECHE will carry significantly less weight since I am no longer a Department Chair, am banished from campus, and am on indefinite administrative leave.

47. Prior to the events that are the core issue in this case, the interim President of the College, Defendant Costigan, has yelled and screamed at me on at least two separate occasions that are documented.

48. In May of 2017, Defendant Costigan screamed at me in front of a large group of my colleagues and said that perhaps I did not belong working at the College. I took that as a threat to my career, and it caused me great stress, since former President Hughes and her Administration, including Defendant Costigan, have fired many people over the years.

49. Accordingly, I filed a Violence in the Workplace complaint against Defendant Costigan in May of 2017 because she screamed at and threatened me as alleged above. Defendant Costigan was not placed on administrative leave or banished from campus. Nor was she disciplined, because the University of Rhode Island assistant legal counsel investigating the matter concluded that "there was no risk that [Costigan's] behavior would escalate to become a source of a violent act by her or lead to conflict that could become violent" and did not constitute "verbal threats, threats of violence, threatening acts, harassment or intimidation" as those terms are defined in the Act.

50. In 2018, soon after I had been re-elected as President of the CCRIFA, Defendant Costigan screamed at me again, this time in her office, causing me great stress due to her position of authority over me. Again, she was not placed on administrative leave and banished from campus nor was she disciplined.

51. At a recent gathering of CCRI faculty held at NEARI, by a show of hands, numerous members raised their hands and said the Defendant Costigan had raised her voice and yelled at them.

52. After I led a no confidence vote against President Hughes and VPAA Costigan in 2018, CCRI retaliated against me by summarily removing me as Department Chair in 2019 and attempting to permanently remove me by asserting baseless claims, which were eventually determined to be unfounded. I was restored to my Department Chair position with back pay. This was the Defendants' most recent previous attempt to silence me as an advocate for the faculty by removing me from a position of power and influence as a Department Chair.

I hereby swear under penalty of perjury that this affidavit is a true and accurate statement to the best of my knowledge.

_12-22-2023_
**Date**

_____
**Steven D. Murray**

Sworn and subscribed to before me in _Park City_ (city/town), _Utah_ (state) on this _22nd_ day of **December, 2023**.

_____
NOTARY PUBLIC
(name) _Edward A Kendall, II_
My Commission Expires: _July 11, 2026_

EDWARD AUGUSTUS KENDALL, II
Notary Public
State of Utah
My Commission Expires July 11, 2026
Commission Number 725694

Page 7 of 7